UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL K. HAMBLIN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the<br>Social Security Administration,<br><br>　　　　Defendant. | ) Case No. CV 07-6192 PJW<br>)<br>)<br>) MEMORANDUM OPINION AND ORDER<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

　　Before the Court is Plaintiff's appeal of a decision by Defendant Social Security Administration ("the Agency"), denying his application for disability insurance benefits. For the reasons discussed below, the Agency's decision is REVERSED and the action is REMANDED for further proceedings consistent with this opinion.

　　Plaintiff initially filed applications for disability insurance benefits and supplemental security income on March 3, 1999, alleging that he had been disabled since January 2, 1997. (Administrative Record ("AR") 43.) An Administrative Law Judge ("ALJ") issued a decision on May 10, 2000, finding that Plaintiff was not disabled at any time through that date. (AR 43-47.) Plaintiff did not appeal that decision.

After his application was denied, Plaintiff worked as a driver in 2001 and 2002. (AR 106.) On October 29, 2002, Plaintiff sustained injuries when a cement truck he was driving overturned on the freeway. (AR 241, 514.) On January 22, 2004, Plaintiff filed a new claim for disability insurance benefits, alleging that he had been unable to work since December 13, 2002. (AR 95-97.) The Agency denied it on April 15, 2004. (AR 72-75.) Plaintiff did not seek reconsideration of that denial.

On October 4, 2004, Plaintiff filed another claim for disability insurance benefits. (AR 98-102.) The Agency denied this claim, too. (AR 77-79.) Plaintiff then requested and was granted a hearing before an ALJ. On November 7, 2006, Plaintiff appeared with counsel at the hearing and testified. (AR 510-32.) On February 21, 2007, the ALJ issued a decision denying the application.[1] (AR 17-25.) Plaintiff appealed to the Appeals Council, which denied Plaintiff's request for review. (AR 8-11, 14-16.) Plaintiff then commenced this action.

Plaintiff raises two claims of error. He argues first that the ALJ failed to properly consider a disability rating by the Veterans Administration ("VA"). (Joint Stip. at 4-6.) Next, he argues that the ALJ erred in concluding that Plaintiff was not credible. (Joint Stip. at 13-22.) For the reasons discussed below, the Court concludes that the ALJ erred in failing to consider the VA's disability rating but did not err in finding that Plaintiff was not credible.

The ALJ found that the medical evidence established that Plaintiff had "musculoligamentous injury to the cervical and lumbar

---

[1] The ALJ determined that because of changed circumstances the Agency's prior denials were not binding on the Agency in this case. (AR 21.)

spine, [and] osteoarthritis of the bilateral knees and left ankle." (AR 24.)  He determined that Plaintiff's impairments did not meet or equal a Listed impairment, and that, consistent with the opinion of Dr. Frank Cunningham, a stage agency consultative orthopedist, Plaintiff retained the residual functional capacity to perform a limited range of light work.  (AR 22, 24, 489-501.)  Relying on the testimony of a vocational expert, the ALJ concluded that Plaintiff could perform work existing in significant numbers in the economy and, therefore, he was not disabled.  (AR 23-24.)

In reaching this conclusion, the ALJ noted Plaintiff's obesity, history of knee surgeries in 1976 and 1998, and left ankle surgery in 1998.  He also noted that the VA had assigned a disability rating to Plaintiff and had increased the rating from ten percent to 40 percent as of June 16, 2003.  The VA considered Plaintiff to be 80 percent disabled after that date.  (AR 22.)  Other than noting the rating itself, the ALJ did not discuss it in his decision.  As explained below, the ALJ's failure to do so requires remand.

The disability rating of the VA is ordinarily entitled to great weight in a social security disability case.  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).  Although an ALJ is not required to simply adopt a VA disability rating, he must consider it in reaching his decision.  *Id.* at 1076.  Furthermore, "because of the marked similarity between these two federal disability programs[,]" the ALJ may give less weight to such a rating only if he gives "persuasive, specific, valid reasons for doing so that are supported by the record".  *Id.*

Here, other than mentioning the rating in his recitation of the evidence, the ALJ did not discuss the VA's disability determination.

3

This was error. The ALJ was bound to set forth "persuasive, specific, [and] valid reasons" for discounting the VA rating. *Id.*

The Agency appears to suggest that the ALJ was not required to address the June 16, 2003 VA rating because Plaintiff's date last insured was March 31, 2003. (Joint Stip. at 6-7.) The Court disagrees. If that was the reason the ALJ did not consider the rating, he needed to say so. Further, the record shows that the VA rated Plaintiff's disability at 70 percent as of March 31, 2003, his date last insured. (AR 149.) The ALJ did not address this rating, either. So the Agency's argument as to why the ALJ did what he did does not seem to be supported by this record.

Alternatively, the Agency argues that the ALJ *did* consider the VA's disability rating and implicitly rejected it. (Joint Stip. at 7-11.) It contends that the *McCartey* requirement that the ALJ give "persuasive, specific, valid reasons" supported by the record for discounting a VA rating is akin to the standard used to weighing conflicting medical opinions. (Joint Stip. at 10.) In the Agency's view, because an ALJ can reject a treating physician's opinion that is contradicted by other evidence in the record "by setting forth a detailed and thorough summary of the facts and conflicting clinical evidence," the ALJ could reject the VA rating by setting forth the evidence and relying on the opinion of the examining orthopedist, Dr. Cunningham. (Joint Stip. at 10-11.)

This argument is rejected. The Ninth Circuit has made clear what is required to discount a VA rating--silently, or impliedly, rejecting it does not meet that standard. Further, it cannot be discerned from the ALJ's decision why the ALJ failed to rely on the VA rating, and the Court, and the Agency, are bound by the reasons set forth in the

4

decision. Where, as here, the ALJ fails to set forth any reasons for rejecting evidence he was required to consider, his decision cannot be affirmed. *Stout v. Comm'r, Soc. Security Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)). For this reason, the matter must be remanded for further proceedings. On remand, the Agency must address the VA disability ratings.

In his second claim of error, Plaintiff argues that the ALJ failed to provide clear and convincing reasons for finding him not credible. (Joint Stip. at 16-22.) As discussed below, though some of the reasons cited by the ALJ for discounting Plaintiff's credibility are not supported by substantial evidence in the record, the Court finds that the main reason the ALJ found Plaintiff not credible--that he had received only conservative treatment for his allegedly disabling pain--is supported by the record and is sufficient to support the ALJ's finding.

An ALJ must undertake a two-step analysis when considering a claimant's subjective symptom testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citing *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996)). First, he must decide whether the claimant has produced objective medical evidence of an impairment that could reasonably be expected to produce the symptoms alleged. *Id.* If the claimant has met this threshold and there is no evidence of malingering, then the ALJ can only reject the claimant's pain testimony for specific, clear, and convincing reasons. *Id.*

In this case, Plaintiff testified at the administrative hearing that he could not sit for more than 45 minutes before he had to get up and move around, could not stand for more than 15 minutes, and could

5

not crouch or get down on his hands and knees at all. (AR 517.) He rated the pain in his lower back as never less than a five or six out of ten, and the pain in his knees at an eight or nine out of ten. (AR 522.) Plaintiff testified that he spent his time watching TV, doing crossword puzzles, and taking naps. (AR 518.) Plaintiff also testified that he used a cane. At the time of the administrative hearing, Plaintiff was reportedly taking Trazodone to sleep, Hydrochlorothiazide for his blood pressure, and Ibuprofen, Naproxen, and Ciominiphen for his pain. (AR 518-19.)

The ALJ found that Plaintiff's physical impairments were severe and did not find that Plaintiff was a malingerer. (AR 24.) Thus, to support a finding that Plaintiff was not credible, the ALJ needed to provide specific, clear, and convincing reasons. *Tommasetti*, 533 F.3d at 1039. In evaluating Plaintiff's credibility, the ALJ was free to consider many factors, including "ordinary techniques of credibility evaluation,. . . unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, . . . and the claimant's daily activities." *Tommasetti*, 533 F.3d at 1039 (quoting *Smolen*, 80 F.3d at 1284).

The ALJ concluded that Plaintiff's testimony was not credible for several reasons. (AR 23.) First, he found that Plaintiff's testimony was not consistent with the objective medical findings, noting that there was very little evidence of treatment, most of which was provided in conjunction with Plaintiff's Workers' Compensation claim, and all of which was relatively conservative. (AR 23.) Specifically, the ALJ relied on the fact that there was no evidence of treatment since 2004, that Plaintiff did not use a "TENS" unit, that Dr. Cunningham observed that Plaintiff did not use his cane during his

orthopedic examination in January 2007, and that there was no evidence that Plaintiff used home remedies for his pain. (AR 23.)

The Court finds that there is substantial evidence in the record to support the ALJ's finding that Plaintiff received only conservative treatment for his pain after 2004. Plaintiff testified that he had received cortisone shots for the pain in his back, neck, and hip, and that surgery had been suggested as an option but Plaintiff elected not to have it. (AR 515-16.) Other than taking pain medication at night and in the early morning, however, at the time of the administrative hearing, Plaintiff was not undergoing any treatment for his allegedly disabling pain. (AR 519-20.)

Dr. Rahil Khan, Plaintiff's treating physician, reported that Plaintiff received the last of three epidural steroid injections before January 6, 2004. (AR 176.) In that same report, Dr. Khan noted that Plaintiff "currently just has pain in the neck and back, although his back has improved," and that "the numbness, tingling and weakness in the hands is resolving." (AR 176.) Progress notes from the VA Medical Center dated April 2003 to March 2007, indicate that, with respect to Plaintiff's complaints of pain, he only requested a left ankle support on or around March 23, 2006, (AR 314-15), and that he was regularly prescribed various pain medications, including ibuprofen, naproxen, and acetaminophen/codeine between April 2003 and March 2007. (AR 297-303.)

The ALJ was entitled to rely on the lack of more aggressive treatment as a basis for discounting Plaintiff's claim that he was suffering debilitating pain. *See*, *e.g.*, *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) ("[T]he ALJ properly considered [the treating physician]'s failure to prescribe . . . any serious medical

7

treatment for this supposedly excruciating pain"); *see also Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998) (affirming ALJ's rejection of pain testimony based, in part, on evidence that claimant received generally conservative treatment and that medication relieved the alleged symptoms). A fair reading of this record establishes that Plaintiff's treatment was modest compared to his complaints, particularly in the period right before the ALJ's decision. The ALJ was justified in relying on this conservative treatment to conclude that Plaintiff's claim that the pain was severe was not credible.

The second reason cited by the ALJ for rejecting Plaintiff's credibility was that Plaintiff's pain allegations were contradicted by the evidence in the record. (AR 23.) The ALJ noted, for example, that Plaintiff returned to medium level exertional work after his 1999 benefits application was denied, despite his claims to the Agency at that time that he was unable to work due to his physical condition. (AR 23.) The ALJ also noted that Plaintiff's condition had improved with pain medication and physical therapy, that Plaintiff drove himself to Dr. Cunningham's office for an examination, and that Plaintiff traveled to Mexico to have a tooth extracted in 2006. (AR 23.) Finally, the ALJ noted that Plaintiff's daily activities were inconsistent with his allegations. (AR 23.)

The record does not support the ALJ's finding that these facts establish that Plaintiff was lying. For example, the fact that Plaintiff did not use a cane during the consultative orthopedic examination is not a valid reason for finding that Plaintiff did not need a cane and was not telling the truth when he said that he did because it is not clear from the record why Plaintiff failed to use the cane in the examination, i.e., whether he was attempting to

demonstrate to the doctor that he could not walk without the cane or whether he really did not need one and had simply forgotten to pretend that he did when he was being examined by the doctor.  (*See* AR 491.)  Without further evidence, this justification does not support the ALJ's credibility determination.  Nor do the ALJ's observations that Plaintiff drove to an orthopedic examination in 2007 or traveled to Mexico in 2006, without more, justify the adverse credibility finding.  The fact that Plaintiff drove to a doctor's appointment is not enough to convince the Court that he was not in pain.  The fact that he visited Mexico in 2006 is also not enough to prove that his claims of pain were exaggerated.  More facts are necessary to analyze these reasons for finding him not credible, i.e., how far he drove, how long he sat in the car, etc.

The ALJ also relied on the fact that Plaintiff's daily activities were "inconsistent with his allegations" of pain.  (AR 23.)  But he did not explain what activities he was referring to and how they established that Plaintiff could work.  This Court is not allowed to guess.  The ALJ must explain with particularity which activity he is referring to and how it is inconsistent with Plaintiff's claims of severe pain.  (AR 134, 141, 518.)  Absent that, this justification, too, is rejected.

Where, as here, some of the ALJ's reasons supporting his adverse credibility finding are invalid, the Court must determine whether the ALJ's credibility finding can still stand.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).  An ALJ's error is harmless "[s]o long as there remains substantial evidence supporting the ALJ's conclusions on ... credibility and the error does not negate the validity of the ALJ's ultimate credibility conclusion."

*Id.* (quoting *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)).  In this case, the ALJ's credibility finding was based, in part, on the fact that Plaintiff received only conservative treatment for his pain.  This reason is specific and legitimate and is supported by substantial evidence in the record.  The Court finds that this reason alone is enough to support the ALJ's credibility finding. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)).  The Court further finds that the ALJ's reliance on what the Court has concluded are invalid reasons does not undermine the validity of his credibility finding.  Thus, this claim does not warrant remand or reversal.

For all these reasons, the Agency's decision is reversed and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

IT IS SO ORDERED.

DATED:     January 14   , 2009.

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\HAMBLIN, M 6192\Memo_Opinion.wpd